UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAIGE M. C.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 25-cv-05292-AMO

**ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND AND DENYING DEFENDANT'S CROSS-MOTION**

Dkt. Nos. 21, 23

Plaintiff Paige M. C. appeals the Social Security Commissioner's denial of her application for disability insurance benefits. Paige seeks an order reversing the Commissioner's decision and remanding for an immediate calculation and award of benefits, or alternatively, for further proceedings. The Commissioner cross-moves to affirm the decision. Having carefully considered the parties' papers, the arguments set forth therein, and the relevant legal authority, the Court **GRANTS** Paige's motion, **DENIES** the Commissioner's cross-motion, and **REMANDS** this action for further proceedings.

## I. BACKGROUND

### A. Paige's Application for Social Security Disability Insurance Benefits

In October 2022, Paige protectively filed an application for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act, alleging a disability onset date of September 27, 2022. Administrative Record ("AR") at 201. In support of the application, Paige submitted a disability report, function reports, and a work history report. *Id.* at 244-252, 255-262, 263-274, 275-282. She also underwent a consultative examination and submitted

[1] The Court partially redacts Plaintiff's name for privacy reasons. *See* Fed. R. Civ. P. 5.2(c)(1).

United States District Court
Northern District of California

records from her treating doctors, which were reviewed by non-examining state agency consultants. *Id.* at 71-87, 89-97, 313-723.

1. Disability report

In her disability report, Paige identified the following conditions as limiting her ability to work: "1. Severe Anxiety Disorder," "2. Severe Depression Disorder," "3. Spinal Stenosis of the Lumbar Spine (Back pain)," "4. Repetitive strain injury," "5. Overuse Disorder of Soft Tissues," "6. Bilat Forearms," "7. Chronic back pain with lumbar radiculopathy," "8. Nerve/Joint pain in the hands, fingers, jaw, legs, back," "9. Ringing in both ears (Tinnitus)," and "10. Neck pain." *Id.* at 245. In her list of medications, Paige included Benadryl and Melatonin for sleep, Desvenlafex, Pristiq, Topimax, and Wellbutrin for depression and anxiety, Hydroxyzine for anxiety and sleep, and Ondansetron for nausea. *Id.* at 247-248.

2. Function reports

***a. Paige's function report***

On November 6, 2022, Paige completed a function report. AR at 275. Paige indicated that she lives with her husband and adult son. *Id.* at 276. Paige reported having the following conditions: anxiety, depression, back, neck and jaw pain, bulging and ruptured disks, carpal tunnel, tinnitus, insomnia, and sciatica. *Id.* at 275. These conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, complete tasks, and use her hands, as well as her understanding, memory, and concentration. *Id.* at 280. Paige stated that her "anxiety and depression have finally overwhelmed [her]." *Id.* at 277. She panics in large groups. *Id.* She "can't do it[.]" *Id.* Paige reported feeling tired and unable to "overcome the pain and anxiety that [she's] feeling." *Id.* at 282.

Paige's description of daily activities includes: feeding the pets, taking them to the backyard, cleaning the litter box, and helping prepare breakfast, lunch, and dinner. AR at 276. Paige and her family usually eat microwaveable meals or eat out, because that is easier. *Id.* at 277. Paige wrote "it's hard to find energy to cook," and her husband helps her a lot. *Id.* Paige helps with chores as best she can, with help from her husband or son, but needs to take frequent breaks because she cannot use her hands, wrists, or fingers as she once did. *Id.* Paige reported needing

help and encouragement from her husband to do household chores and grocery shopping. *Id.* at 277, 279. Performing errands is difficult for Paige due to her desire to "avoid pain + people + covid." *Id.* at 278. Paige writes: "I don't want to leave home[,]" and she fears "being in large crowds," being "out of [her] home," and "being around people." *Id.* at 278-79, 281-82. As a result, Paige does most of the grocery shopping and errands online. AR at 278. Paige listed watching TV, reading the news, and spending time with family as hobbies. *Id.* at 279. Paige also listed calling, texting, and emailing with friends and family as social activities. *Id.*

Paige described dressing herself and caring for her hair as difficult due to finger and hand pain. *Id.* at 276. Paige stated she generally does not sleep well and that "3 to 4 hours is a good night" for her. *Id.* Paige is unable to pay attention for very long, is "ok" following written and spoken instructions, gets along "fine" with authority figures, and does not handle stress or changes in routine well. *Id.* at 280-81.

As for current medications, Paige listed Pristiq, and indicated "low libido, irritability, sadness, insomnia, low energy" as side effects. *Id.* at 282. Paige also listed Hydroxyzine and indicated brain fog, sleepiness, and grogginess among its side effects. *Id.*

***b. T.C.'s function report***

In the function report from Paige's husband, T.C., he indicated that he has known Paige for over seventeen years. AR at 255. T.C. lives with Paige and stated that she cannot concentrate and can no longer work due to the pain she experiences from her various conditions. *Id.* T.C. reported that Paige's conditions impact her: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, climbing stairs, memory, completing tasks, concentration, and using her hands. *Id.* at 260. T.C. also stated that it is very hard for Paige to lift things and grab things with her hands. *Id.* at 256.

T.C. indicated that Paige remains able to help care for their pets by feeding them, taking them outside, and cleaning up after them. *Id.* However, T.C. and their son also help take care of the pets. *Id.* Paige cares for her son and husband by preparing meals for them and helps with chores like doing the laundry, washing the dishes, sweeping, vacuuming, and dusting. *Id.* at 256-57. T.C. also indicated that Paige's diminishing physical and mental state has hindered her

United States District Court
Northern District of California

participation in hobbies she previously enjoyed, like yard work, exercising, and dancing. *Id.* at 259.

T.C. reported that Paige's pain and mental health conditions prevent her from sleeping and that performing tasks like dressing and grooming is difficult and painful for her. *Id.* at 256. T.C. notes that Paige needs reminders to take her medication and generally takes care of herself. *Id.* at 257. He reports that Paige "doesn't take pain killers whenever she is in physical pain as much as [he] would like." AR at 262.

T.C. indicated that "seeing people in person . . . has stopped" since the onset of Paige's conditions. *Id.* at 260. Paige follows written instructions but struggles with spoken instructions due to her hearing loss and distraction from her pain. *Id.* T.C. also indicated that Paige gets along well with authority figures but does not handle stress or change well. *Id.* at 261. Prior to his retirement, T.C. noted that he previously relied on family medical leave to care for Paige and that his decision to retire was in part due to his desire to care for her. *Id.* at 262.

3. <u>Work history report</u>

In the work history report she completed November 16, 2022, Paige reported working for a homebuilder from February 2003 to May 2005, for a rebar business from May 2005 to May 2007, and for a manufacturing business from May 2007 to September 2022. AR at 263. In the first job, Paige's job responsibilities included: typing, faxing, orders, phone calls, emails, processing service requests, and scheduling contractors, which required Paige to sit for "8 hours," write or type "all day," and reach "all day." *Id.* at 266. As an administrative assistant for the rebar company, Paige's job responsibilities included: typing, answering calls, filling out paperwork and work orders, faxing, and mailing, which similarly required Paige to sit for "8 hours," write or type "all day," and reach "all day." *Id.* at 265. As a senior customer service representative for the manufacturing business, Paige's responsibilities included: typing, data entry, processing orders and quotes, talking on the phone, addressing emails, sending faxes, and reviewing the customer service inbox, which required Paige to sit for "8 hours – all day," write or type "all day," and reach "all day." *Id.* at 264.

United States District Court
Northern District of California

4. Medical Opinions

***a. Paula Zand, M.D.***

Dr. Paula Zand is a family medicine practitioner at Kaiser Permanente. *Id.* at 364. In a work status report dated September 27, 2022, Dr. Zand indicated that Paige was limited to occasionally performing the following tasks: standing, walking, sitting, bending at the waist, torso/spine twisting, keyboard/mouse use, repetitive motions of both hands, and gripping and grasping of both hands. *Id.* at 314. Dr. Zand's report lists the following diagnoses: "repetitive strain injury, overuse disorder of the soft tissues, bilat forearms, spinal stenosis of the lumbar spine, [and] chronic low back pain w lumbar radiculopathy." *Id.* The report also notes that Paige needs to "work in a quiet environment that minimizes distractions." *Id.* at 313.

***b. Tan Pham, M.D.***

In a medical source statement completed on November 28, 2023, Dr. Pham wrote that Paige had a "poor" prognosis. AR at 522. Dr. Pham noted the following observations and clinical findings: "[t]ender neck and low back, both wrists, [d]ecrease range of motion of neck." *Id.* Dr. Pham also noted a November 2022 MRI of the neck and low back as support for the limitations he noted in the report. *Id.* Those limitations include sitting, standing, and walking for 2 hours in a workday, never lifting or carrying more than 10 pounds, and frequently lifting or carrying 0-10 pounds. *Id.* at 523. Dr. Pham also noted manipulative limitations and opined that Paige was limited to occasional gross and fine manipulation and reaching. *Id.* In terms of postural limitations, Dr. Pham opined that Paige could never climb ladders, ropes, or scaffolds, could frequently balance and crawl, could occasionally climb ramps or stairs, and could occasionally stoop, kneel, and crouch. *Id.* at 524. Dr. Pham stated that Paige would require unscheduled breaks every 30 minutes. *Id.* Dr. Pham noted that Paige was a new patient, and "so th[e] form [wa]s filled out after looking at her records, [and] examination + discussion from one visit with her." *Id.* at 525.

***c. Eddie Glantz, M.D.***

Eddie Glantz, M.D., is a board-certified neurologist who performed a Comprehensive Internal Medicine Evaluation of Paige on December 9, 2022. AR at 387, 390. During the

evaluation, Dr. Glantz noted that Paige "was very anxious" and able to "sit comfortably[,]" "get in and out of a chair without difficulty[,]" and "pick a paperclip off the table without difficulty with either hand[.]" *Id.* at 387. Paige "refused to get up on the exam table stating that it would hurt her back too much." *Id.* at 387.

Dr. Glantz stated that Paige's neck was "[s]upple without adenopathy or masses[,]" her extremities were "[w]arm without cyanosis, clubbing, or edema[,]" and her coordination/station/gait demonstrated "[g]ood rapid alternating movements in all four extremities." *Id.* at 389. He noted: "No tremor. No dysmetria. Normal station. Normal toe, heel, and tandem gait." *Id.* Dr. Glantz found Paige's range of motion to be normal in all categories assessed – cervical spine, lumbar region, hips, knees, ankles, shoulders, elbows, wrists, and fingers/thumbs. *Id.* Paige did not exhibit paravertebral muscle spasms but did exhibit "paravertebral muscle tenderness at the lumbar level." *Id.* He noted 5/5 strength "at the bilateral shoulders, elbows, wrists, grip, hips, knees, and ankles with normal bulk and tone throughout all four extremities." *Id.*

Dr. Glantz diagnosed Paige with "lower back pain with negative straight leg raise and full range of motion[,]" "cervical spine pain[,]" and "history of carpal tunnel syndrome with bilateral wrist pain and intact function." *Id.* at 390. Dr. Glantz found Paige's maximum functional capacity for standing, walking, and sitting, with normal breaks, to be "up to 6 hours in an 8-hour workday." *Id.* Dr. Glantz assessed Paige's maximum functional capacity to lift/carry/push/pull to be "50 pounds occasionally/25 pounds frequently." *Id.* Dr. Glantz's assessment of Paige's maximum functional capacity for postural activities indicated that Paige "can do frequent climbing of steps and stairs, balancing, stopping, crouching, kneeling, and crawling. She should avoid ladders, scaffolds, and ropes with any potentially distracting pain." *Id.* Finally, Dr. Glantz's report indicates that Paige's maximum functional capacity as to manipulative activities is limited to "frequent reaching overhead and forward, handling, fingering, and feeling with either upper extremity." *Id.* The report also indicates that Paige "should avoid working on unprotected heights in the presence of any potentially distracting pain," but noted "no other environmental limitations at this time." *Id.*

***d. State Agency Consultants***

As part of the initial review of Paige's application, on February 8, 2023, medical state agency consultant A. Dipsia, M.D., assessed Paige's physical residual functional capacity. AR at 71, 82-84, 87. Dr. Dipsia opined that Paige is occasionally able to lift or carry 25 pounds and frequently able to lift or carry the same amount of weight. *Id.* at 82-83. Dr. Dipsia also opined that Paige is able to stand, walk, and sit, with normal breaks, for about "6 hours in an 8-hour workday." *Id.* Dr. Dipsia found no limitations in Paige's ability to "push and/or pull (including operation of hand and/or foot controls," "other than shown, for lift and/or carry." *Id.* at 83. Dr. Dipsia also found that Paige has postural limitations and is limited to frequently climbing ramps, stairs, ladders, ropes, and scaffolds, and frequently stooping, kneeling, crouching, and crawling. *Id.* Dr. Dipsia found no limitation in Paige's ability to balance. *Id.* Dr. Dipsia also found no manipulative, visual, communicative, or environmental limitations. *Id.* at 83-84.

In connection with the reconsideration of Paige's application, on August 28, 2023, medical state agency consultant Gilpeer, M.D., opined that Paige was limited to unskilled work because of her impairments, could adjust to other work, and had ability to perform medium work. *Id.* at 89, 95-96. Dr. Gilpeer found that Paige could "occasionally lift and/or carry (including upward pulling)" up to 50 pounds and frequently "lift and/or carry (including upward pulling)" up to 25 pounds. AR at 94. Dr. Gilpeer also found that Paige's ability to "push and/or pull" in upper and lower extremities was "[u]nlimited, other than lift and/or carry." *Id.* Dr. Gilpeer determined that Paige could stand, walk, and sit, with normal breaks, for about 6 hours in an 8-hour workday. *Id.* Dr. Gilpeer noted that Paige did have postural limitations and was limited to frequently climbing ramps, stairs, ladders, ropes, and scaffolds, balancing, stopping, kneeling, crouching, and crawling. *Id.* at 95. Dr. Gilpeer found no manipulative, visual, communicative, or environmental limitations. *Id.*

**B. The Denial of Paige's Application**

On February 14, 2023, the Commissioner denied Paige's application for disability insurance benefits. AR at 99. On March 6, 2023, Paige requested reconsideration. *Id.* at 109. On August 30, 2023, the Commissioner denied Paige's application on reconsideration. *Id.* at 112.

United States District Court
Northern District of California

### C. The Administrative Hearing

Paige filed a request for a hearing on September 12, 2023. AR at 119. Administrative Law Judge ("ALJ") Enrico Alis held the telephonic hearing on February 28, 2024. *Id.* at 18, 41. The ALJ heard testimony from Paige, who was represented by counsel, and Alan L. Ey, a vocational expert. *Id.* at 44.

1. <u>Paige's testimony</u>

Paige testified that she worked as a senior customer service representative at a manufacturing company until she resigned in September 2022 due to her conditions. AR at 45. In that role, Paige took orders over the phone, email, and the company's website. *Id.* at 48. Paige also provided administrative support to sales representatives, typed "close to . . . all day," and sat most of the day. *Id.* When the ALJ asked Paige why she resigned, she said "[b]ecause of the pain, both mental and physical. I just couldn't do it anymore." *Id.* at 46. Paige stated that she has "back pain and neck pain everyday" which causes her to be stiff. AR at 51. "As for the mental part of it," Paige testified that she was no longer able to manage the stress she had been under. *Id.* She did not want to get on the phone or talk to anyone. *Id.* She was sad and did not want to be in groups of people. *Id.* Everything "just changed for [her]." *Id.* She "just couldn't do it anymore." *Id.*

Paige testified that she began experiencing these symptoms prior to September 2022 and that working from home helped her cope with them. *Id.* at 52. However, her employer asked her to return to work in-person, which "caused even more symptoms in itself, just the thought of that beings [*sic*] it was just hard." *Id.*

Paige testified that physical therapy "helps some . . . with the stiffness, but it doesn't take away the pain" in her neck and back. *Id.* at 53. She also received shots in her wrists to help with the pain in her forearms, wrists, and fingers from carpal tunnel. *Id.* at 52-53. The injections only provide "a temporary fix," as she continues to experience problems with her wrists and thumbs. AR at 53-54. When asked by her attorney if the next step in treatment for her neck and back was surgery, Paige stated: "No. I am not close to that, because it's arthritic and it's degenerative disc disease and there's not really a surgery for that." *Id.* at 58-59. Paige testified that she spends a lot

of time in bed, and more than fifty percent of the time, she cannot get out of bed. AR at 57-58.

When asked by the ALJ about the treatment plan for her carpal tunnel and thumb issues, Paige stated that there is no treatment beyond the shots she is already receiving because due to her back and neck issues, her care providers cannot guarantee she has carpal tunnel. *Id.* at 60. The ALJ then asked Paige if she could pinch her index finger and thumb together with both hands, which Paige stated she could do, but it was "very painful." *Id.* at 60-61. Additionally, Paige indicated that she could make a fist with both hands and could hold a phone in either hand "for a short period of time." AR at 61. Paige stated that she could hold a phone in either hand for a few minutes at a time but needs to "switch . . . back and forth." *Id.* She is able to turn a doorknob "with pain." *Id.* at 61-62. Despite being right-handed, Paige testified that her left hand is worse than her right. *Id.* at 61.

Paige testified that she does not take any medication to help with the pain caused by her physical conditions other than Advil, because "[i]t just band-aids things, and then [she] cannot tell if [she's] getting well or not." *Id.* at 55-56. Paige tries not to take it "because [she] knows it's not good for you[,]" and because of her fatty liver disease. *Id.* at 62. Instead, when Paige experiences pain that does not rise to the level where Advil is needed, she uses the physical therapy stretches that "really seem to help minimize some of [the pain]" or she uses a cold compress or heating pad. AR at 62.

2. <u>The vocational expert's testimony</u>

After Paige testified, the ALJ heard from Alan Ey, a vocational expert. AR at 63-68. Ey classified Paige's past-work as an "Order Clerk: 249.362-026; SVP 4; semi-skilled, sedentary, both as generally and actually performed." *Id.* at 63. Ey stated that this classification would cover Paige's administrative duties "because they seem so closely wrapped up" in her work as an order clerk. *Id.*

Once Ey classified Paige's prior work, the ALJ asked Ey two hypothetical questions. *Id.* at 63-66. First, the ALJ asked Ey to consider a hypothetical individual with Paige's age, education, and past work experience but assume that the individual could perform medium work and would be limited to frequent climbing, balancing, stooping, kneeling, crouching, and crawling. *Id.* at 63-

64. The ALJ then asked if this individual would be capable of performing Paige's past work. AR at 64. Ey testified that this individual could perform such work and that this testimony was consistent with the Dictionary of Occupational Titles ("DOT"). *Id.* In the second hypothetical posed, the ALJ asked Ey to consider an individual of Paige's same age, education, and past work experience, but assume that the individual could perform light work, and was limited to occasional climbing, balancing, stooping, kneeling, crouching, crawling, and frequent interaction with supervisors, coworkers, and the public. *Id.* The ALJ asked Ey if this hypothetical individual would be able to perform Paige's past work. *Id.* Ey testified that it would be "a borderline call[,]" but "out of an abundance of caution . . . [he] would say no[,]" the individual could not perform such work. AR at 64.

The ALJ also asked Ey if the skills Paige acquired from past work were transferrable to other positions that fit within the limitations in the two hypothetical scenarios. *Id.* Ey testified that Paige's skills would transfer to such positions as Data Entry Clerk: 203.582-054 and Clerk, Typist: 203.362-010, with 89,000 and 19,000 national positions, respectively. *Id.* at 65. Ey confirmed that Paige's skills were transferrable to these positions with little vocational adjustment and that the testimony was consistent with the DOT. *Id.* The ALJ then asked Ey if the two alternative positions identified would provide the hypothetical employee with the ability to alternate between standing and sitting at their discretion. *Id.* Ey responded that "[t]he Data Entry Clerk would not. The Clerk, Typist potentially. Some of the most recent data out of the Department of Labor indicates that 80% of office jobs allow for a stand/sit option." *Id.* at 66. Finally, the ALJ asked if the two alternative positions identified would be available if the hypothetical individual could only occasionally handle and finger with the non-dominant upper extremity and frequently with the other extremity. *Id.* Ey responded they would not be available in that case. *Id.*

On cross-examination, Ey testified that normally for an Order Clerk position there is some "specific training concerning products and specific processes used by the given company." *Id.* at 67. When Paige's counsel asked if the identified alternative positions, Data Entry Clerk and Clerk, Typist, also required specific industry or company training, Ey said "there would be some

United States District Court
Northern District of California

of that, yes." *Id.*

3. The ALJ's Decision

On June 6, 2024, the ALJ issued a written decision. AR at 18-31. In applying the five-step sequential evaluation process set forth in the Social Security Administration's regulations, the ALJ found that Paige was not disabled from September 27, 2022, through the date of the decision. *Id.* at 19.

***a. Step one***

At step one, the ALJ considered whether Paige engaged in substantial gainful activity. AR at 19. The ALJ found that despite working after the onset date and accruing modest earnings in the fourth quarter of 2022, Paige had not been engaged in substantial gainful activity since the alleged onset date, September 27, 2022. *Id.* at 20.

***b. Step two***

At step two, the ALJ considered whether Paige had a medically determinable impairment that is "severe" or a combination of impairments that is "severe." AR at 19. The ALJ found the following impairments severe: disorder of the skeletal spine, aortic atherosclerosis, and obesity. *Id.* at 20. The ALJ noted that while Paige suffers from pain in her hands, fingers, wrists and forearms, this condition was not considered a severe impairment in light of the evidence in the record showing "mild to generally normal findings, supporting no more than a minimal limitation in the claimant's ability to perform work activities." *Id.* at 21.

***c. Step three***

At step three, the ALJ considered whether Paige's impairments met or medically equaled "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." AR at 23 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). Having considered listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), the ALJ found that none of Paige's impairments singly or jointly equaled a listed impairment. *Id.* at 22-25.

The ALJ then proceeded to evaluate Paige's residual functional capacity ("RFC"). The ALJ found that Paige's "medically determinable impairments could reasonably be expected to

cause the alleged symptoms[.]" AR at 26. The ALJ, however, found Paige's "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." *Id.* The ALJ thus found that Paige's impairments limited her to "a medium level of exertion," with "no more than frequent postural limitations." *Id.* at 26, 30.

***d. Step four***

At step four, the ALJ determined that Paige can perform past relevant work as an Order Clerk: 249.362-026, SVP 4, semi-skilled, sedentary, because this work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." AR at 30 (citing 20 C.F.R. § 404.1565). Because the ALJ determined that Paige's RFC did not impede performance of past relevant work, he found Paige "not disabled." *Id.*

**D. Paige's Request for Review by the Appeals Council**

On June 6, 2024, Paige requested review of the ALJ's decision. AR at 1. The Appeals Council denied Paige's request on April 28, 2025. *Id.* at 1-4. Once the Appeals Council denied review, the ALJ's decision became the final Commissioner's decision. *Id.* at 1.

**E. This Action**

On June 24, 2025, Paige commenced this action against the Commissioner, seeking judicial review of the denial of her application for Social Security disability benefits pursuant to 42 U.S.C. § 405(g). Dkt. No. 1. On August 21, 2025, the Commissioner filed a certified copy of the administrative record as its answer. Dkt. No. 23. Paige filed her opening brief on December 1, 2025. Dkt. No. 21 ("Mot."). The Commissioner filed its cross-brief on December 22, 2025. Dkt. No. 23 ("Cross-Mot."). Paige's reply brief followed on January 5, 2026. Dkt. No. 24 ("Reply").

## II. LEGAL STANDARD

**A. Standard of Review**

"Th[e] court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

"While the substantial evidence standard requires 'more than a mere scintilla,' it requires only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Ninh M. v. Bisignano*, 827 F. Supp. 3d 1282, 1288 (N.D. Cal. 2026) (citing *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "In determining whether the Commissioner's findings are supported by substantial evidence, [courts] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). If the record could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted). As long as the ALJ "show[s] [his] work, . . . [t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

If the ALJ commits legal error, the court must nonetheless uphold the decision if the error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). An error is harmless if "it is inconsequential to the ultimate nondisability determination . . . or, if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.* (citations and internal quotations omitted).

**B. The Five-Step Disability Inquiry**

The Social Security Administration's regulations set forth a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The relevant inquiry at each step is as follows:

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

> 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. *Tackett*, 180 F.3d at 1098. Nonetheless, at every step of the inquiry, the ALJ has an affirmative duty to assist the claimant in developing the record. *Id.* at 1098 n.3. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.*

In between the third and fourth steps, the ALJ must determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). After determining the claimant's residual functional capacity, the ALJ proceeds to the next step of the disability inquiry. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1198-99 (9th Cir. 2024).

## III. DISCUSSION

Paige seeks reversal of the Commissioner's decision on three grounds. Mot. at 21. First, Paige argues that the ALJ erred by finding her "bilateral hand and wrist pain and depressive and anxiety disorders" to be non-severe impairments and further erred by not including "any manipulative or non-exertional limitations related to mental functioning"[2] in the RFC determination and not including those limitations in each of the hypotheticals posed to the vocational expert. *Id.* at 11-14. Second, Paige contends that the ALJ erred by failing to properly consider the medical opinions of her treating physicians. *Id.* at 14-18. Third, Paige argues that the ALJ erred by failing to offer clear and convincing reasons for rejecting her subjective symptom testimony. *Id.* at 22-24. The Commissioner asks that the Court affirm the ALJ's decision because

[2] In light of the few cursory sentences Paige devotes to the issue in her opening brief, the Court finds that she has waived any argument concerning her claimed mental impairments. Mot. at 13; *see Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) (citing Fed. R. App. P. 28(a)(9)(A) ("We require contentions to be accompanied by reasons"). This Order therefore does not further address the record evidence or the arguments concerning the claimed mental impairments.

substantial evidence supports each of the determinations Paige challenges in this appeal. Cross Mot. at 7-16. The Court addresses each disputed issue in turn.

**A. Did the ALJ err in considering Paige's non-severe medical impairments?**

"An impairment is severe if it 'significantly limits' an individual's 'ability to do basic work activities.' " *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (citing 20 C.F.R. § 404.1520(c)). "An impairment or combination of impairments can be found 'not severe' only if it the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Id.* (internal quotations and citations omitted). When assessing a claimant's RFC, "[t]he ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citation omitted).

Paige argues that because her left wrist exhibited "mild triscaphe, first carpometacarpal joint space narrowing with subchondral sclerosis and marginal osteophytosis[,]" and "mild degenerative changes[,]" which were not resolved by treatment, the ALJ erred in considering the condition "non-severe." Mot. at 12-13. This argument does not persuade. The ALJ expressly noted Paige's ability to "hold a phone for a short period of time, turn a doorknob, but not without pain," "pick up a paperclip off the table without difficulty with fingers and thumbs," a "normal range of motion in her wrists bilaterally," and no more than "mild tenderness" in her wrists despite her reports of continued pain. *Id.* at 21. Substantial evidence thus supports the ALJ's non-severity finding, and this Court is not free to re-weigh the record evidence in the first instance. *See Ferguson*, 95 F.4th at 1199 ("If the evidence can reasonably support either affirming or reversing a decision, [the court] may not substitute [its] judgment for that of the ALJ.").

The Court, however, finds that the ALJ erred in formulating Paige's RFC. At the RFC stage, "[t]he ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe." *Carmickle*, 533 F.3d at 1164 (internal citation omitted). The Ninth Circuit has cautioned that although "a non-severe impairment[ ] standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of

a claim." *Id.* (internal citations omitted; modification in original). The Commissioner asserts that the ALJ "specifically discussed normal wrist findings in the RFC discussion," but does not point the Court to any instances where the ALJ specifically incorporated corresponding limitations in making the RFC determination. *See* Cross Mot. at 8. And despite the ALJ's assertion that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity," AR at 21, he did not incorporate any manipulative limitations in Paige's RFC assessment. *See id.* at 18-31. The ALJ's failure to do so was error. *See Carmickle*, 533 F.3d at 1164 (finding that the ALJ erred by not including a limitation for an impairment (tendonitis) that a claimant's provider opined would significantly limit the claimant's ability to perform rotary movement).

Moreover, the ALJ's failure to incorporate limitations corresponding to Paige's hand and wrist impairment is not harmless. It impacted the hypotheticals posed to the vocational expert, who testified that certain jobs would be unavailable if the ALJ's initial hypothetical was modified to account for the manipulative limitations of which Paige complains. This error is thus consequential to the determination of disability and warrants remand so that the ALJ can consider the appropriate manipulative limitations at the RFC stage and reassess any subsequent steps in the disability determination as necessary. *See Carmickle*, 533 F.3d at 1164 (directing ALJ to assess claimant's RFC, "including all of his relevant limitations," "reassess the step-four conclusion in light of [the claimant's] complete RFC[,] . . . and if necessary, proceed to step five.").

**B. Did the ALJ err in evaluating the medical source opinion testimony?**

" 'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.' " *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (citing 20 C.F.R. §§ 404.1520c(b), 404.1520c(a). Supportability is "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.' " *Id.* at 791-792 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency is "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.' " *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

"The agency 'must articulate . . . how persuasive' it finds 'all of the medical opinions'

from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings.' " *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.*

The ALJ found Dr. Zand's opinion "only partially persuasive" and "somewhat supported" by Paige's treatment records. AR at 29. The ALJ noted that while "findings showed assessments for the claimant's spinal disorder and aortic atherosclerosis, they did not show abnormal exam findings prior to []his opinion and d[id] not fully support the claimant being limited to the degree opined." *Id.* The ALJ also found Dr. Zand's opinion "only somewhat consistent with the record overall," citing "later records showing some abnormal findings on exam and imaging for [Paige's] cervical and lumbar spine, but generally normal physical exam findings otherwise," which the ALJ interpreted as supporting "a medium level of exertion with no more than frequent postural maneuvers." *Id.*

The ALJ found Dr. Pham's opinion "not persuasive." AR at 30. He determined that the opinion was "not generally supported by the records reviewed o[n] his exam," which showed "some tenderness to the neck and lower back with decreased range of motion at the neck, but no other exam findings supporting the degree of limitation opined." *Id.* The ALJ specifically noted that Dr. Pham himself indicated that his opinion "was not the result of a sustained treating relationship." *Id.* The ALJ also found Dr. Pham's opinion "generally not consistent with the record overall," citing records "showing some abnormal findings, including mild tenderness to palpation in [Paige's] lumbar spine, slightly reduced patellar reflexes, and an antalgic gait but generally normal findings otherwise, along with improvement in her left side neck rotation with physical therapy." *Id.* The ALJ determined that these findings supported a "medium level of exertion with limitations to no grater than frequent postural maneuvers." *Id.*

Paige argues that the ALJ erred by failing to "sufficiently articulate consideration of the supportability and consistency of the opinions authored by treating sources Dr. Zand and Dr. Phan." Mot. at 15. The Court agrees. In discounting the opinions of Paige's treating sources, the



United States District Court
Northern District of California

ALJ acknowledged "abnormal findings[,]" but did not examine the evidence in the broader context of Paige's impairments. Nor did the ALJ give any explanation as to why the improvement he noted was representative of Paige's overall condition. By failing to do so, the ALJ erred. *See Stambuk v. Colvin*, No. 23-2561, 2025 WL 88845, at *1 (9th Cir. Jan. 14, 2025) (reversing district court's affirmance of the Commissioner's denial of benefits where "the ALJ correctly found that both doctors' opinions were based on [the claimant's] condition in mid-2019[,]" but "did not take into account the later medical evidence" that did not show improvement in the claimant's condition). Remand is therefore appropriate so that the ALJ can reassess the supportability and consistency factors in light of the entire medical record. *See Treichler*, 775 F.3d at 1103-04 (explaining that "further administrative proceedings would be useful" when "conflicts, ambiguities, gaps," or factual issues exist in the record).

**C. Did the ALJ err in considering Paige's subjective symptom testimony?**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter*, 504 F.3d at 1035-36. Step one requires the ALJ to "determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282 (citations omitted). Furthermore, there is no requirement for "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.* (citation omitted).

At step two, "if the claimant meets th[e] first test, and there is no evidence of malingering," the "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (quotation and citations omitted). The ALJ must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). "[A]n

ALJ may engage in ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and inconsistencies in testimony," and a claimant's daily activities, "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Burch*, 400 F.3d at 680 (citation omitted); *Smolen*, 80 F.3d at 1284 (citations omitted).

Here, the ALJ found that Paige's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" but that her "statements concerning the intensity, persistence, and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." AR at 27.

Paige argues that the ALJ erred when he made this "boilerplate finding" with limited analysis. Mot. at 23-24. The Court agrees. While the Commissioner proffers reasons that could support the ALJ's credibility determination, it is for the ALJ, in the first instance, to "specify which testimony [they] find[] not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Brown-Hunter*, 806 F.3d at 489. "The absence of such explicit reasons constitute[s] reversible error, which cannot be saved by the post hoc rationalizations now offered by the Commissioner before the Court." *E.M. v. Kijakazi*, 591 F. Supp. 3d 595, 633 (N.D. Cal. 2022). Remand is therefore appropriate. *See id.* at 637 (remanding for further proceedings so that the ALJ could reassess the claimant's testimony).

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Paige's motion for remand, **DENIES** the Commissioner's cross-motion, and **REMANDS** this case for further proceedings. The Clerk is directed to enter judgment consistent with this Order and close the file in this matter.

**IT IS SO ORDERED.**

Dated: August 17, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**